OF

## THE STATE OF IOWA

AT

## DES MOINES, MAY TERM, A. D. 1898,

AND IN THE FIFTY-SECOND YEAR OF THE STATE.

---

WESLEY M. JOHNSON v. THE DES MOINES LIFE INSURANCE COMPANY, Appellant.

**Insurance:** SETTING OUT TRUE COPY OF APPLICATION. Under McClain's Code, section 1733, providing that a true copy of any application or representation of the insured which is referred to in the policy shall be indorsed thereon, or attached thereto, otherwise the insurer shall be precluded from pleading it or the falsity thereof, such copy need not be a *fac simile*, but must be so exact that on comparison it may be said to be a true copy, without resorting to construction.

RULE APPLIED. The substitution in a purported copy of an application for life insurance, of "children" for "mother," as a term of relationship, the omission of a question as to the amount of other insurance in the same company, the consolidation of several questions into one, the setting out of answers to questions not given in the original and the insertion of questions as to the details of general questions in the original, are such variations as to require

construction; and hence it is not a true copy, within McClain's Code, section 1733, requiring true copies of such applications to be endorsed or attached to a policy of which they are a part.

REPORT OF MEDICAL EXAMINER. A special report of a medical examiner is not a part of the "application or representation of the assured," within McClain's Code, section 1733, requiring such to be endorsed on or attached to a life insurance policy, of which it is made a part.

*Appeal from Lee District Court.*—HON. H. BANK, JR., Judge.

TUESDAY, MAY 10, 1898.

ACTION to recover upon a policy of life insurance issued by the defendant on the life of L. May Johnson, upon her application in writing therefor. Defendant answered, alleging among other things that certain statements made in said application as true, and upon which defendant relied, were false, fraudulent, and untrue, and known to said applicant, at the time they were made, to be false, fraudulent, and untrue. On the trial the defendant, to prove the statements made, offered said application in evidence, to which the plaintiff objected "because no copy of the application is attached to the policy, as provided by section 1733 of McClain's Code; the copy purporting to be a copy of the application in question, which is attached to the policy, being only a copy of a portion of the application." This objection was sustained, and the defendant having rested, the court, on motion of the plaintiff, directed the jury to find for the plaintiff in the amount claimed, and entered judgment accordingly. Defendant appeals.—*Affirmed.*

*Cummins, Hewitt & Wright, A. J. McCrary* and *A. H. Evans* for appellant.

*J. C. Davis* for appellee.

GIVEN, J.—I.  Said section 1733 of McClain's Code is as follows: "All insurance companies or associations shall, upon the issue, or renewal of any policy, attach to such policy, or endorse thereon, a true copy of any application or representation of the assured, which, by the terms of such policy are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy.  The omission so to do shall not render the policy invalid, but if any company or association neglects to comply with the requirements of this section, it shall forever be precluded from pleading, alleging or proving such application or representation or any part thereof, or falsity thereof, in any action upon such policy, and the plaintiff in any such action shall not be required, in order to recover against such company or association, either to plead or prove such application or representation but may do so at his option." The application offered in evidence, and the purported copy thereof attached to the policy, are upon printed blanks, filled up in writing, and differing somewhat in form and words, as will be hereafter noticed.  It appears that prior to the issuing of this policy the defendant changed the form of its blank applications, and printed the new form on the back of its policies. This application was made upon the old form, and the copy upon the new; hence the differences we are called upon to consider.

The first contention is as to the meaning of the words "true copy," as used in said section.  Defendant contends that a substantial copy is all that is required, while the plaintiff insists that it must be exact, accurate, and not merely a substantial copy.  In determining this contention, we must consider the purpose of the statute, as well as the

meaning of the words. An evident purpose of this statute is that when the application is made a part of the contract, as in this case, a true copy must be attached to the policy, so that the writings composing the contract may all appear together, and that the insured may be in possession of the evidence of what his contract is. With this purpose in mind, we inquire what is intended by the words "true copy." It is said that nothing is added by the word "true"; that, to be a copy, it must be a true copy; and yet this discusssion recognizes that a copy may be only substantial, or that it may be exact, accurate, or a true likeness of the original. The word "true" surely emphasizes the requirement. The following definitions found in *Webster's International Dictionary* will aid in solving this question: "Copy. To make a copy or copies of; to write, print, engrave, or paint after an original; to duplicate; to reproduce; to transcribe; as to copy a manuscript, inscription, design, painting," etc. "True, (1) Comformable to fact; in accordance with the actual state of things; correct; not false, erroneous, inaccurrate, or the like; as a true relation or narration; a true history. A declaration is true when it states the facts. (2) Right, to precision; conformable to a rule or pattern; exact; accurate; as a true copy; a true likeness of the original." "Substantial. (1) Belonging to substance; actually existing; real; as substantial life. (2) Not seeming or imaginary; not elusive; real; solid; true; veritable." "Comparison. (1) The act of comparing; an examination of two or more objects with the view of discovering the resemblance or differences; relative estimate." It is by comparison of these two documents that we have ascertained the differences between them, while by construction we determine whether the differences are such as that the purported copy is or is not a substantial copy of the original.

Construction is defined as: "(4) The Method of constructing, interpreting, or explaining a declaration or fact; an attributed sense or meaning; understanding; explanation; interpretation; sense." "Strictly, the term [construction] signifies determining the meaning and proper effect of language by a consideration of the subject-matter and attendant circumstances in connection with the words employed." In view of these definitions, and the purpose of the statute, we think it is clear that the statute contemplates more than a merely substantial copy, and yet not a true likeness or *fac simile*. It must be so exact and accurate as that, upon comparison, it can be said to be a true copy, without resorting to construction. If, upon comparison, it may be said that the copy is comformable to the facts, and in accordance with the actual state of things appearing in the original, then it may be said to be a true copy; but if the differences are such that construction must be resorted to, to determine whether the meaning and proper effect of the copy are the same as the original, then it cannot be said to be a true copy. Appellee cites *Goodwin v. Association*, 97 Iowa, 226' in which we held that a true copy was not attached to the policy. In that case the examiner's report was not included in the copy, and the places to which notices and premiums were to be addressed were incorrectly stated in the copy, and some of the statements made by the assured with reference to his past afflictions were not carried out in the copy. Whether the examiner's report was a necessary part of a true copy was not considered in the case, and the conclusion reached was because of the other omissions named. The examiner's report is not part of the "application or representation of the assured," and is not required to be included in the copy. The same is true as to the notes of instructions given for making the

application and answers, and as to indorsements upon the back of the application made for mere convenience. Appellee's counsel, following the abstract, we presume, have pointed out differences which, upon comparison, we find do not exist, as that in the date in one "A. D." appears, while in the other it is omitted. These contentions will not be further noticed.

As we hold that Form C, the special report of the medical examiner, is not a part of the "application or representation of the assured," its absence from the copy need not be further considered. Our inquiries are limited to the differences in Forms A and B in the original and in the copy, and first in Form A. Form A reads, "L. May Jonhson, jointly with," etc., while in the copy the words "jointly with" are erased. In designating the beneficiaries, the original reads: "Harold L., Sales C., Loa B., & Merle Jonhson, children, equally. Relationship, mother." In the copy, following the word "Relationship," is the word "children." The original reads: "Are you now insured in the Des Moines Life Association? If so, how much? No." The copy reads: "Are you now insured in the Des Moines Life Association, in this or any other state? No." These are the only differences that we discover between the copy of Form A and the original. Turning to Form B., we find that the original has five questions and answers, as follows: "(a) Are you in good health? Yes. (b) Have you now any disorder or disease? If so, what? No. (c) Have you ever had any illness or local disease? Give full particulars. No. (d) Have you ever had any personal injury or accident? Give full particulars. No. (e) Did you ever have any surgical operation? Give full particulars. No?" The copy is as follows: "(a) Are you in good health? Yes. (b) Have you now any disorder or disease? If so, what? No. (c) Have you

ever had any illness, local disease, or any personal injury, accident, or been subject to any surgical operation? If yes, state nature, date, duration, severity, and sequel. No." In the original the question, "Have you had rheumatism?" is followed by these further questions: "How many attacks, duration, in what years, was it inflammatory, parts affected, accompanied by cough, shortness of breath, pain in chest, or palpitation of heart?" Each of these questions is followed by a dash, and so appears in the copy, except that the word "No" is written opposite the first question. In the original to the question, "Are you ruptured?" no answer appears, while in the copy it is answered "No." In the original the fifty-two questions are answered in the negative, wherein the applicant is asked whether she had had any of the diseases named, while in the copy they number only fifty; three questions in the original being combined in one in the copy, namely, affection of liver, spleen, or kidneys. In all other respects they are identical, except as to the order in which the questions and answers appear. We have thus pointed out all the differences between the original and the copy, and , while it might be said that the copy is substantially correct, we think it cannot be said to be a true copy. The variations are such as to call for construction to uphold the copy, even as a substantial copy. We think there was no error in sustaining the objection to the offer of this copy in evidence, nor in instructing the jury to find for the plaintiff.—AFFIRMED.