ROSE E. CRANDALL, appellant, v. BANKERS LIFE COMPANY, a corporation, appellee.

No. 48401.

(Reported in 62 N.W.2d 169)

January 12, 1954.

Rehearing Denied February 11, 1954.

J. D. Reynolds and Thos. E. Mullin, both of Creston, and R. E. Killmar, of Osceola, for appellant.

Herrick & Langdon, of Des Moines, and Anderson & Werner, of Creston, for appellee.

WENNERSTRUM, J.—Plaintiff, Rose E. Crandall, the widow of Kenneth M. Crandall, was named beneficiary of an insurance policy in the amount of $10,000 issued by the defendant-company. The plaintiff brought an action to recover on the policy, the defendant-company having denied liability. The case was tried to a jury which returned a verdict for the defendant. The plaintiff has appealed.

The defendant-company filed an answer in three divisions, the first of which constituted a general denial. The second pleaded an affirmative defense of fraud practiced on the defendant's local medical examiner by Kenneth M. Crandall in that he had falsely answered questions propounded to him relative to his health. The third division pleaded an affirmative defense of fraud and misrepresentation in the original application submitted by the deceased to the company. The defendant also sought rescission of the contract of insurance by virtue of the claimed misrepresentation. The plaintiff in her reply denied the fraud and pleaded the provisions of section 511.31 of the 1950 Code. She asserted that by virtue of the statute referred to, which will be later set forth and which relates to a physician's certificate, the company is estopped from pleading fraud and the denial of payment under the terms of the contract. Plaintiff also pleaded section 511.33, 1950 Code, which provides there must be a true copy of the application attached to the policy. She also maintained there was not a true copy attached and that by virtue of section 511.34, 1950 Code, the defendant was estopped from making any defense to payment. Although there was a jury verdict in favor of the defendant a judgment was entered under the pleadings and offer of the defendant in favor of the plaintiff in the amount of $481.60, the same being the amount of the premium paid.

The application for insurance, which was the initial basis on which the policy was issued to Kenneth M. Crandall, was dated October 3, 1950. Attached to this policy was a claimed photostatic copy of the application. Crandall died as the result of a heart attack on November 3, 1950. His widow filed proof of death with the company on December 3, 1950, in which she stated Dr. John C. Parsons of Des Moines had attended her husband within the past three years. In the application which Crandall made for the insurance he stated he was in good health, that he had not consulted, been treated or attended by a physician within the past five years, had not suffered from any ailment or disease of the heart, lungs, respiratory tract or thyroid glands and had not consulted a physician for any ailment or disease not previously mentioned. The application which Crandall signed stated he had read the answers given and that they were correctly recorded.

The medical examination was made by Dr. John L. Hoyt of Creston who testified he had asked Mr. Crandall each of the questions on the application and had correctly set down his answers. He also testified that in reporting favorably on Crandall's application to the company he had relied on the answers given to him by Crandall. Doctor Parsons, a heart specialist in Des Moines, testified Crandall had heretofore been his patient, that he first saw him on January 27, 1949, at which time he had high blood pressure, a heart murmur and accentuated heart tones and that he had diagnosed his condition as hypertensive heart disease. He further testified he prescribed phenobarbital and instructed the patient to take a quarter grain three times a day. Doctor Parsons was next consulted by Mr. Crandall on March 10, 1949, and subsequently on April 21, 1949, August 4, 1949 and December 8, 1949. On April 27, 1950, Mr. Crandall was examined by Dr. Joseph T. Skaggs, an associate of Doctor Parsons, who testified his examination at that time disclosed "aortic second sound 'tambourine-like' questionable murmur." The patient was prescribed phenobarbital three times daily and directed to return in three months. On July 27 Mr. Crandall again was examined by Doctor Parsons. He was furnished a further amount of phenobarbital and was

given samples of Diasalt as a salt substitute. On October 26, 1950, Crandall again consulted Doctor Parsons and was furnished phenobarbital and directed to take it three times daily and was also given a salt substitute.

Dr. A. E. Johann, vice-president and medical director of the defendant-company, testified he favorably passed upon the application of Crandall, that he or the company had no knowledge of information concerning the health of the applicant other than the application itself and that this application and a report of an investigator did not disclose any information relative to the heart condition of the applicant or that he had been a patient of Doctor Parsons. He further testified if the company had known Crandall had consulted a physician and had knowledge of the facts shown by the testimony of Doctor Parsons the company would have declined to issue the policy of insurance.

In connection with the pleading of the plaintiff that a true copy of the application for insurance is not attached to the insurance policy, the plaintiff calls attention to the fact there were certain check marks and circles in black pencil and red ink made on the original of the application which do not show on the photostatic copy attached to the policy. By reason of this contention the plaintiff maintains the defendant-company is estopped to make any defense to the payment of the policy.

The trial court permitted Dr. John C. Parsons, a witness for the defendant, to testify that there were drugs, if taken, which would result in a lower blood pressure reading. Plaintiff at the time of the offer of this evidence made objection thereto on the ground that it was improper inasmuch as there were no pleadings or basis to support such a question and that the same was prejudicial to the plaintiff. The trial court overruled the objections made and permitted the doctor to state that phenobarbital was such a drug. The plaintiff contends the defendant-company did not plead or charge that Crandall, prior to or during the time he was examined by a local medical examiner for the defendant-company, had taken any such drug nor had the defendant-company introduced any evidence to connect up the accusation or charge made by the doctor.

At the conclusion of all the evidence the company made a motion wherein it asked the court to direct the jury to return a verdict in favor of it and against the plaintiff because the facts disclosed showed there had been fraudulent statements, misrepresentations and concealments by the applicant. It claimed the examining physician and the company were deceived and misled by the answers of Crandall. Plaintiff made a motion wherein she asked the court to withdraw from the consideration of the jury all the allegations, evidence and claims made by the defendant-company asserting the company was estopped to maintain its defenses by reason of section 511.31, 1950 Code. The court did not rule on these motions and stated it would submit the case to the jury. However, at the time of the submission of a motion for new trial and the ruling thereon the court overruled all motions made prior to the submission of the case to the jury. In connection with the exceptions to instructions the plaintiff only made complaint relative to one, of which reference will be hereinafter made. There were no requested instructions asked by the plaintiff.

The plaintiff as grounds for reversal states that the court erred (1) in holding that the photostatic copy of the application for insurance showing the answers made to the medical examiner was a true copy and that it failed to follow the provisions of section 511.34, 1950 Code; (2) in overruling plaintiff's objection to the testimony of Dr. John C. Parsons and in permitting him to testify there were drugs which, if taken by a person suffering from high blood pressure, would result in a reading of lower blood pressure, and phenobarbital was such a drug; (3) in refusing to rule on plaintiff's motion to withdraw certain divisions of defendant's answer, in refusing to rule on a motion to require the defendant to elect on which of two divisions of its answer it would stand, in refusing to rule on plaintiff's motion for directed verdict at the close of all the evidence and in waiting until after the case had been sent to the jury and a motion for new trial had been filed before it ruled on the several motions; (4) in giving an instruction which stated in part, "In considering these charges of fraud, you are instructed that all the questions, and the answers of Kenneth M. Crandall

thereto, are material, and if you further find that the defendant has proven by a preponderance of the evidence that the said Kenneth M. Crandall, in answering said questions, gave the false answers thereto as claimed by the defendant * * * the verdict should be in favor of the defendant." She maintains the materiality of the representations was one element of the claimed fraud and was a question of fact for the jury and not of law for the court. The plaintiff further contends the court erred in all of its instructions wherein the jury was told the defendant must only prove its defense of fraud by a "preponderance of evidence" whereas it is the. law of the State of Iowa that the defendant must prove its defense of fraud by "clear, satisfactory and convincing evidence"; the plaintiff further asserts the court erred in refusing to sustain her motion for directed verdict made at the close of all the evidence on the ground there was insufficient evidence introduced on the part of the defendant by which the jury could find fraud on the part of the insured.

The Code sections heretofore referred to and which are material to this case are as follows:

"511.31 Physician's certificate—estoppel. In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

"511.33 Application for insurance—duty to attach to policy. All life insurance companies or associations organized or doing business in this state under the provisions of the preceding chapters shall, upon the issue of any policy, attach to such policy, or indorse thereon, a true copy of any application or representation of the assured which by the terms of such

policy are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy, or, upon reinstatement of a lapsed policy, shall attach to the renewal receipt a true copy of all representations made by the assured upon which the renewal or reinstatement is made."

"511.34 Failure to attach—defenses—estoppel. The omission so to do shall not render the policy invalid, but if any company or association neglects to comply with the requirements of section 511.33, it shall forever be precluded from pleading, alleging, or proving such application or representations, or any part thereof, or the falsity thereof, or any part thereof, in any action upon such policy, and the plaintiff in any such action shall not be required, in order to recover against such company or association, either to plead or prove such application or representation, but may do so at his option."

■■ I. The application for insurance is a part of an Iowa policy of insurance. Section 511.33, 1950 Code. The purpose of making the copy of the application a part of the insurance agreement is to disclose to the insured what representations he made and what his entire agreement is. Johnson v. Des Moines Life Ins. Co., 105 Iowa 273, 276, 75 N.W. 101. Any memorandum placed on the original of an application by the insurer which in no way affects or changes the representations made by the applicant does not constitute a noncompliance with the statute if this memorandum is not on the copy attached. Kayser v. Occidental Life Ins. Co., 231 Iowa 620, 629, 1 N.W.2d 715. The case of Cline v. Iowa State Live Stock Ins. Co., 195 Iowa 918, 921, 192 N.W. 309, has application to insurance other than life. However, it involves the question of the necessity of attaching a copy of an application. It was therein held the applicable statute did not apply to words written on the application by an agent to indicate the policy was in effect on the signing of the application. This last cited case is applicable to the situation disclosed in the instant case. The contention of the plaintiff in this case to the effect a true copy of the application was not attached is without merit.

■ II. One of the claimed errors is the admittance of the

548

testimony of Doctor Parsons that phenobarbital is a drug, which, if taken by a person who has high blood pressure, will result in a reading of a lower blood pressure. It should be kept in mind the doctor had first testified he had prescribed the use of this drug.

It is the particular contention of the appellant that there was no evidence to show Crandall had taken phenobarbital prior to his examination for insurance by Doctor Hoyt. And in connection with the objection to this particular question asked it was claimed. that it was an attempt to inject an issue in the case which is not there by the pleadings. It is true no such claim was pleaded and under the record the objection should have been sustained. However, by reason of the doctor's previous testimony relative to the use of phenobarbital we do not deem the error sufficient for reversal.

■ III. There was no error made by the trial court in reserving its ruling to withdraw certain divisions of defendant's answer, in reserving ruling on plaintiff's motion to require defendant to elect on which of the two .divisions of its answer it would stand and in reserving ruling on plaintiff's motion for a directed verdict. The motion to direct a verdict for the plaintiff was in effect ruled on by the submission of the case to the jury. In doing so it thus properly overruled plaintiff's motion to direct. The motion to require defendant to elect between divisions two and three of its answer, if it had been ruled on, should have been denied and plaintiff was not harmed by the failure to rule on it. Each of the divisions pleaded in effect a fraud on the company. In its instructions the court submitted the case on the allegations of each division. That was in effect a denial of the motion to require defendant to elect. Hill v. City of Winterset, 203 Iowa 1392, 1395, 214 N.W. 592. We find no merit in the claimed error.

■ IV. Upon the question relative to the court's instruction that the answers of Crandall in the application were material, we hold there was no error. The trial court at the time of ruling on the motion for a new trial made the following comment as explanatory of the reason for giving the instruction in the form it did:

"Now, that matter of the instruction on materiality of these matters, I think now as I thought then that under the facts and evidence as developed in the trial, and under the law as I think it is and should be, that the matters submitted were in fact, as a matter of law, material and the matter for the jury to determine was whether or not they were in fact false and known to be false and made for the purpose of inducing the defendant to issue the policy."

All the court said in the instruction was that the answers of Crandall were material as bearing upon the question whether they were false. It left that question for the determination of the jury. We do not see where there was any error in stating the instruction as it did.

In Fountain & Herrington v. Mutual Life Ins. Co., 4 Cir., N. C., 55 F.2d 120, 123, it is stated: "Answers made in response to questions in the application as to prior illness, consultation with physicians and applications for other insurance, where the applicant, as here, declares that they are true and offers them as an inducement to the issuance of the policy, are deemed material as a matter of law. * * *."

V. The plaintiff states as a claimed ground for reversal that one of the instructions was erroneous in that it is claimed the defendant must prove its defense of fraud by clear, satisfactory and convincing evidence. The plaintiff did not take exception to the instruction. Rule 196, R. C. P.

In the instant case the question relative to the instruction pertaining to the degree of proof was first presented in an amendment to the motion for new trial on December 12, 1952—over sixteen months after the filing of the original motion for new trial. We could dispose of this claimed error on the ground this exception was not timely made as provided by the Rules of Civil Procedure. Pelter v. Spring, 242 Iowa 1117, 49 N.W.2d 478, 490; Eggermont v. Central Surety & Ins. Corp., 238 Iowa 28, 33, 24 N.W.2d 809.

However, the contention is without merit. In the case of In re Estate of Dolmage, 204 Iowa 231, 234–237, 213 N.W. 380, 382, there is a holding to the following effect: "'It is, however, the established law of this state that questions of fact submitted

to a jury in civil cases are to be determined by a preponderance of evidence.'" See also In re Estate of Wulf, 242 Iowa 1012, 1016, 48 N.W.2d 890, 892; Carlson v. Bankers Trust Co., 242 Iowa 1207, 1214, 50 N.W.2d 1, 6; Roth v. Headlee, 238 Iowa 1340, 1343, 29 N.W.2d 923, 924; Meredith v. Cockshoot, 235 Iowa 213, 220, 16 N.W.2d 221, 225.

VI. We find no merit in plaintiff's contention that there should have been a directed verdict in her favor. We hold the trial court properly submitted to the jury the question relative to the falsity of the answers given by Crandall in the application for insurance.—Affirmed.

All JUSTICES concur.