L. L. BRIERLY, Executor of Estate of J. H. HENDRICKS, Appellant, v. ED A. DUNNICK, Appellee.

No. 47467.

(Reported in 39 N.W. 2d 645)

 

November 15, 1949.

Ennis McCall, of Newton, for appellant.

Bray, Carson & McCoy, of Oskaloosa, for appellee.

Oliver, J.—Apparently the note was drawn upon a printed form. It was undated. The petition alleged it was executed by defendant to John H. Hendricks, plaintiff's testate, on or about March 1, 1944. It was for $11,000, provided for interest at seven per cent per annum from date, payable semiannually, and contained other provisions not here material. At the bottom was the statement, "Due March 1-45." On the back were three endorsements:

"Interest paid March 1-1945
Interest paid in full to March 1, 1946
Interest paid in full to March 1, 1947."

The executor prayed judgment for $11,000 with interest at seven per cent from March 1, 1947. Defendant's answer alleged as an affirmative defense, that on or about October 15, 1943, he owed Hendricks an unpaid balance of $3,887.07 on a $12,000 note; that Hendricks orally stated he was in difficulty and needed defendant's note for $11,000 with interest at seven per cent per annum and that if defendant would give him such a note and pay him $440 per year, commencing with 1945, until the death of Hendricks, Hendricks would surrender the $12,000 note and the $11,000 note would be canceled and surrendered to defendant upon the death of Hendricks and defendant would not be indebted to Hendricks after his death, or to his estate; that

Hendricks also stated that upon payment to him of each installment of $440 he would endorse upon said note interest to the preceding March 1; that thereupon defendant agreed to and did on said date sign and deliver to Hendricks the $11,000 note prepared by Hendricks and the $12,000 note was surrendered to defendant; that defendant paid Hendricks $440 during each of the years 1945, 1946 and 1947 and fully performed the agreement between him and Hendricks; that after the death of Hendricks, in 1947, his executor refused defendant's request to return said note to defendant; that there was no consideration for the note sued on other than as above stated.

Plaintiff's reply asserted defendant's affirmative plea was not a defense because it was an attempt to vary by parol the terms and provisions of the written instrument in suit. Defendant introduced evidence tending to establish the facts pleaded as an affirmative defense. Plaintiff-executor admitted decedent had informed him defendant was paying only $440 per year and not seven per cent as provided by the note. Plaintiff testified decedent made the first endorsement on the back of the note; that plaintiff made the second endorsement at decedent's request and also the third endorsement after decedent's death when defendant produced a canceled check made to decedent for $440 which evidenced the fact that interest on the note had been paid to March 1, 1947. No witness for plaintiff attempted to explain why, upon payment of $440, defendant was each year credited with interest for one year. The trial resulted in a verdict and judgment for defendant and this appeal. Plaintiff made no motion for directed verdict nor is it contended the evidence, if admissible, was insufficient to support the verdict of the jury.

I. Plaintiff contends the pleaded affirmative defense and the evidence introduced in support thereof were obnoxious to the parol-evidence rule and that the court erred in overruling his motion to strike that division of the answer and his objections to such evidence. The briefs discuss the legal propositions at some length and refer to various texts and decisions. However, the precise proposition here involved has already been determined by this court.

In Ball v. James, 176 Iowa 647, 650, 652, 158 N.W. 684, 685, the defense pleaded to a suit by an executor on a note secured by a mortgage was a verbal agreement between decedent and defendant that defendant would take the money represented thereby and pay decedent six per cent interest thereon during decedent's life and that decedent would will the money to defendant and " 'the principal would never have to be paid.' "

The decision states:

"These instruments were complete in themselves. The alleged oral undertaking neither added thereto nor detracted therefrom. It did not purport to vary either. It served merely as an inducement to the entering into the written contracts on the terms stated therein. * * * neither the note nor the mortgage recites the consideration, and, though this is presumed as between the parties, it is subject to proof, and the evidence that, in addition to an amount of money loaned, there was an executory agreement, in no manner violates the rule excluding parol evidence tending to vary the terms of a written instrument."

Another decision in point is Herron v. Brinton, 188 Iowa 60, 65, 175 N.W. 831, 833, which refers to Oakland Cemetery Assn. v. Lakins, 126 Iowa 121, 101 N.W. 778, 3 Ann. Cas. 559, and states:

"In each case, the answer pleads that the real agreement between the parties was for the payment of interest on the sum stated during the life of the payee, and that the note given was made and delivered, not as a promissory note, evidencing a debt for the amount named, but as evidencing and securing to the payee the interest on the principal sum named, during his lifetime.

"In each case, also, the question of law is raised whether the facts so pleaded state a defense to an action on the note. We there held, in effect, that the plea not only goes to the question of the consideration of the note sued upon, but was also within the rule permitting proof of conditional delivery, as well as the rule which permits parol evidence of the discharge of a written agreement 'although the transaction involves proof of a collateral parol agreement.' "

Among other cases applying or recognizing the rule are Sutton v. Griebel, 118 Iowa 78, 91 N.W. 825; Kruse v. Wickham, 228 Iowa 617, 620, 292 N.W. 518; Short v. Anderson, 233 Iowa 238, 243, 8 N.W. 2d 740. We hold the motion and objections based upon the parol-evidence rule were not meritorious and the orders of the trial court overruling the same were correct.

■ II. Defendant testified decedent came to defendant's home in October 1943 and there was a conversation between them concerning a note. He was then asked if Exhibit A (the note in suit) was the note he signed that evening. The court overruled plaintiff's objection to defendant's competency under the dead man statute, section 622.4, Code of Iowa, 1946, and defendant gave an affirmative answer. Error is assigned to the ruling.

In argument plaintiff assumes the signing of the note by defendant was a personal transaction between defendant and decedent. However, the record at the time the ruling was made did not definitely show this. Although the trial court might have inferred the note was executed by defendant and delivered to decedent in connection with the conversation, we do not think it was required to draw such inference. Plaintiff could have shown the circumstances by cross-examination preliminary to the objection or, when the circumstances were subsequently disclosed by defendant or other witnesses he could have renewed his objections and moved to strike the answer. He did neither. In re Estate of Hoyt, 180 Iowa 1250, 1259, 163 N.W. 430. Furthermore, we are not inclined to attach much importance to this testimony. Both sides at all times agreed defendant signed the note (Exhibit A) and the evidence of other witnesses that he signed it at the time in question was undisputed. Hence, assuming the incompetency of the witness, no prejudice appears.

■ III. Defendant's wife testified decedent, John Hendricks, came to their home in October 1943 and had a conversation with defendant in which she took no part; that decedent "pulled this $12,000 note out of his pocket and laid it down there and he says there is somebody prying into our business and it isn't any of their damn business what we do and I want you to give me a note for $11,000. Ed says I don't owe you $11,000. I don't even owe you $4000 on this $12,000 note. John said I know you don't but I need a note for $11,000 bearing 7

per cent interest beginning in 1943 and if you will pay me $440 a year beginning in '45 at the time of my death you can pick up this $11,000. Ed says I can't pick up that note. They won't give it to me. Oh, yes, John says, I will fix that. * * * John says further, you can pay me $440 during the year any time and I will mark interest paid up to the first of March on the note. * * * Yes, Ed said he would give him the note. Mr. Hendricks wrote out the $11,000 note and threw the old $12,000 note on the library table. My husband signed the $11,000 note and Mr. Hendricks put it in his billfold. No money changed hands at that time between John Hendricks and Ed. My husband took the old $12,000 note and put it in the cupboard. I do not know what became of the $12,000 note. I have looked for it but have been unable to find it. The old note was dated March 1, 1930 and was due March 1, 1945. It was payable to John Hendricks and it was signed by my husband, Ed A. Dunnick."

The witness testified also she and her husband later examined the $12,000 note and the endorsements thereon in decedent's handwriting and figured the unpaid principal and interest amounted to $3,887.07. A sister of defendant's wife also testified to the transaction between decedent and defendant.

The testimony of defendant's wife concerning the transaction between decedent and her husband was received over plaintiff's objections to the competency of the witness, under the dead man statute. Error is assigned to the overruling of these objections. Plaintiff contends defendant's wife was incompetent because she participated with the others in social conversations before and after the business transaction between decedent and defendant in which she testified she did not participate.

Plaintiff asserts "there was but one 'conversation' that evening and it lasted for the full duration of decedent's visit * * * [two hours]." The record is to the contrary. Nor has the dead man statute been interpreted as requiring a holding that there may be only one transaction or communication during the entire time two or more persons are in the same proximity.

In Calhoun v. Taylor, 178 Iowa 56, 61, 159 N.W. 600, 601, a like contention was disposed of as follows:

"On cross-examination [of plaintiff's husband], it appeared that the witness had engaged in conversation with decedent on other subjects while at the table, but had not participated in that concerning his dealings with his children. That the witness may have spoken with decedent on some other subjects disconnected from the conversation exclusively between father and daughter did not preclude him from testifying to what was said in the latter. The test is whether the witness objected to as incompetent took part in the particular conversation on the subject inquired about, and if he did not, his testimony is to be received for what it is worth."

In O'Dell v. O'Dell, 238 Iowa 434, 444 to 448, 26 N.W. 2d 401, plaintiff at the request of her deceased husband brought him a strongbox. Decedent searched the contents and engaged in a conversation with his son, Wayne, relative to a contract which was missing. The trial court took the position that since plaintiff had produced the box, what followed was all a part of the same transaction but this court held her part in the transaction ended when she produced the box, stating: "Plaintiff took no part in the conversation between her husband and Wayne. She was competent to testify to that conversation."

IV. Plaintiff complains also that over his objections to their competency under the dead man statute, defendant and his wife were permitted to testify to the contents of the old $12,000 note which the evidence showed had been lost after decedent surrendered it to defendant. The orders overruling the objections were correct. The testimony of the contents of the old note which was executed by defendant appears to have been based upon an examination of the note a day after it came into defendant's possession and not upon a personal transaction between defendant and decedent.

In Erwin v. Fillenwarth, 160 Iowa 210, 215, 216, 137 N.W. 502, it was held testimony concerning certain notes held by decedent which the witness examined did not disclose a personal transaction or communication. The lost instrument in Scott v. Brenton, 168 Iowa 201, 211, 212, 150 N.W. 56, 60, was a con-

tract between plaintiff-witness and his deceased mother. The decision states:

"It is not shown that plaintiff's mother was even present at the time he testified he saw her signature and the contents of the writing. * * * But it was satisfactorily shown that the contract had been lost. This being so, why may plaintiff not testify as to what he observed in regard to the contract if the transaction was past?"

Chidester v. Harlan, 180 Iowa 171, 179, 159 N.W. 659, 661, relied upon by plaintiff is not in point. There "The contents of the instrument involve a communication made by the grandfather to this grandson, touching his purpose and wish in the disposition of his estate after his death, in so far as it affected the grandson. This was purely a personal transaction or communication, and came within the inhibition of the statute." In other words, the testimony of the grandson concerning the contents of the alleged (lost) written statement in question was considered to be in the same category as testimony that decedent had made the statement by word of mouth to the grandson concerning the share of his estate he wished the grandson to receive.

V. Two forms of verdict were submitted to the jury: (1) a verdict for plaintiff for $12,388.14, the principal and interest on the note in suit, and (2) a verdict for defendant. Plaintiff complains that the court refused to submit an additional form of verdict assessing the amount of plaintiff's "recovery at $....." This complaint is without merit. The action was upon a written promise to pay $11,000, with interest at seven per cent. Judgment was prayed for that amount with interest. The only question of fact was whether defendant had established his affirmative defense. Under the issues plaintiff was entitled to recover all or nothing. The forms of verdict were correct.—Affirmed.

All JUSTICES concur.