FRANCES L. CARLSON, appellee, v. BANKERS TRUST COMPANY, executor of estate of BERTHA S. DENHOLM, appellant.

No. 47968.

(Reported in 50 N.W.2d 1)

1208

1210

November 13, 1951.

Holliday & Myers and L. B. Bartholomew, all of Des Moines, for executor-appellant and cross-appellee.

Hallagan & Lucier, of Des Moines, for claimant-appellee and cross-appellant.

GARFIELD, J.—Plaintiff moved to dismiss the executor's appeal on the ground its brief does not comply with rule 344, Rules of Civil Procedure. The brief does fail to comply in several respects with this rule. For example, there is no reference in the statement of facts or argument to lines of the record as required by rule 344(a)(2). The statements of errors relied on for reversal contain no references to the record to show the manner in which the error arose and the ruling of the court thereon as required by rule 344(a)(4) (First). Some brief points do not state the grounds of complaint of the ruling as required by 344(a)(4) (Second). There are other deficiencies.

We do not approve noncompliance with our rules. Substantial compliance with them is the litigant's only safe course. Patterson v. Wuestenberg, 239 Iowa 658, 663, 664, 32 N.W.2d 209, 212. However, we are reluctant to dismiss the appeal upon the grounds urged and have concluded to overrule the motion. But counsel are cautioned to comply with rule 344 in preparing their briefs. Lack of substantial compliance may result in dismissal of the appeal.

Since the executor has not argued its second assigned error it will be deemed waived. Rule 344(a)(4) (Third); Tuttle v. Nichols Poultry & Egg Co., 240 Iowa 199, 210, 35 N.W.2d 875, 880, and citations; State v. Erb, 238 Iowa 612, 615, 28 N.W.2d 24, 26, and citations.

Testatrix-Bertha Denholm, a widow aged sixty-nine, died December 28, 1949. Plaintiff-Frances Carlson is her only child. Her will, later probated, made June 4, 1948, leaves a cousin, Allan Clark of Pasadena, California, some corporate stock, her residence in Des Moines, and the furniture and other personalty therein. The will leaves plaintiff some shares of stock and the rest of her property.

In her amended claim plaintiff alleges that on December 25, 1949, testatrix in contemplation of death gave her the furniture and other personalty in testatrix' home and the contents of her safe-deposit box in Bankers Trust Company of Des Moines (executor herein). The executor's answer is a denial and a plea the amended claim is barred by section 635.68, Code, 1950.

A jury was waived. After trial the court held a gift to plaintiff was established of the furniture and effects in the home and the contents of the safe-deposit box but not of three bank accounts and a government bond of $25. Both parties have appealed. We consider the executor's appeal first.

I. Plaintiff's husband was permitted to testify to a conversation between testatrix and plaintiff at the latter's home on Christmas Day, 1949, over defendant's objection he was incompetent under section 622.4, Code, 1950, which provides: "No party to any action * * * nor any person interested in the event thereof * * * and no husband or wife of any said party * * * shall be examined * * * in regard to any personal transaction or com-

munication between such witness and a person * * * deceased * * * against the executor * * *."

Defendant has attempted at some length to show both in the trial court and here that Mr. Carlson was an incompetent witness under this statute because, it is said, he is "interested in the event" of the action. While of course the interest of a witness may always be shown as affecting his credibility, it was unnecessary for defendant to attempt to show Mr. Carlson's interest as a basis for objecting to his competency under section 622.4. The mere fact he is the husband of plaintiff renders him incompetent, under the plain terms of the statute, to testify to any communication between him and testatrix as against her executor.

However, under our repeated holdings plaintiff's husband is not incompetent to testify to a conversation between plaintiff and testatrix in which the witness took no part. O'Dell v. O'Dell, 238 Iowa 434, 446, 26 N.W.2d 401, 407, and citations; Hansen v. Waugh, 237 Iowa 304, 316, 21 N.W.2d 762, 768; Meredith v. Cockshoot, 235 Iowa 213, 221, 16 N.W.2d 221, 225.

Here plaintiff's husband testified he took no part in the conversation between plaintiff and her mother in which the latter told the former " 'I have given you everything I have now. That means everything in the house, all I have in my safety box, all the personal property I own,' and she also reminded her there were passbooks in—I believe it was a purse she said in the china closet, and she wanted her to be sure if anything happened to her she would take care of that. And she said 'Now here is the key to the house and the key to the safety box. Put it away and take care of it.' "

It is true Mr. Carlson greeted Mrs. Denholm when she arrived at the Carlson home with his wife by saying he was glad she could come, asking her how she felt and to remove her coat. But this preceded the conversation he says he overheard and was no part of it. Also, after the conversation he says he overheard, his wife turned to him and asked him to take the keys and put them in a safe place, which he did. The trial court was justified in finding this request directed to Carlson alone was also no part of the conversation between mother and daughter. Neither the greeting nor the request of his wife to put the keys in a safe place rendered Mr. Carlson incompetent to testify to that conversation.

See, in support of our conclusion, Brierly v. Dunnick, 240 Iowa 1359, 1364, 1365, 39 N.W.2d 645, 648, 649; O'Dell v. O'Dell, supra, 238 Iowa 434, 446, 447, 26 N.W.2d 401, 407, 408; In re Estate of LaGrange, 191 Iowa 129, 132, 181 N.W. 807; Calhoun v. Taylor, 178 Iowa 56, 61, 159 N.W. 600, 601, where it is said:

"On cross-examination [of plaintiff's husband], it appeared that the witness had engaged in conversation with decedent on other subjects while at the table, but had not participated in that concerning his dealings with his children. That the witness may have spoken with decedent on some other subjects disconnected from the conversation exclusively between father and daughter did not preclude him from testifying to what was said in the latter. The test is whether the witness objected to as incompetent took part in the particular conversation on the subject inquired about, and if he did not, his testimony is to be received for what it is worth. [Citations.]"

This same quotation appears in Brierly v. Dunnick, supra. See also 70 C. J., Witnesses, section 458, page 346.

In re Estate of LaGrange, supra, holds a daughter claiming certificates of deposit as a gift from her deceased father was not incompetent under what is now section 622.4 to testify she placed the certificates in a suitcase in the presence of her father. The decision is cited with approval in O'Dell v. O'Dell, supra, where plaintiff at the request of her deceased husband brought him a strongbox in which he searched for a contract which was missing. Decedent then called his son and conversed with him regarding the contract. We held plaintiff was not incompetent, simply because she brought the box to her husband, to testify to his search of the box and his conversation with his son. The O'Dell case in turn is approved in Brierly v. Dunnick, supra.

See also In re Estate of Fili, 241 Iowa 61, 68, 40 N.W.2d 286, 290, where we say: ".The witness may testify as to his own independent acts or conduct in which decedent did not participate. [Citations.]"

■ We are committed to the view section 622.4 is not to be enlarged by construction and those whom the statute designates incompetent will be held so only as to the particular kind of testimony clearly forbidden by the statute. See In re Estate of

Schultz, 196 Iowa 125, 194 N.W. 242; In re Estate of LaGrange, supra, 191 Iowa 129, 132, 181 N.W. 807; Secor v. Siver, 188 Iowa 1126, 1131, 161 N.W. 769, 176 N.W. 981; Curd v. Wisser, 120 Iowa 743, 746, 95 N.W. 266. This accords with the construction many courts place upon like statutes. 58 Am. Jur., Witnesses, section 216; 70 C. J., Witnesses, section 275, pages 208, 209; article by Mason Ladd, 19 Iowa Law Review 521, 538.

▪ Mr. Carlson's testimony that he took no part in the conversation between his wife and her mother was a proper matter for the trial court to consider in weighing his evidence as to what was said between them and in passing on his credibility. Hart v. Hart, 181 Iowa 527, 530, 164 N.W. 849. We may assume it was so considered by the trial court who, in the absence of a jury, was sole judge of the credibility of the witnesses.

▪ II. Defendant (executor) challenges the sufficiency of the evidence to support the judgment. The trial court's findings of fact have the force and effect of a jury verdict and are conclusive upon us if supported by substantial evidence. The case is not reviewable de novo here but only upon the errors assigned. Rule 334, Rules of Civil Procedure; In re Estate of Conner, 240 Iowa 479, 487, 36 N.W.2d 833, 838; Roth v. Headlee, 238 Iowa 1340, 1342, 29 N.W.2d 923, 924, and citations; In re Estate of La-Grange, supra, 191 Iowa 129, 134, 135, 181 N.W. 807. It was for the trial court to determine the weight of the evidence. Roth v. Headlee, supra, and citations.

▪ Defendant is mistaken in asserting the proof must be clear, satisfactory and convincing. That requirement prevails in an action in equity to enforce a decedent's oral contract to dispose of property. Williams v. Harrison, 228 Iowa 715, 723, 293 N.W. 41, 44, and citations; Bosserman v. Watson, 230 Iowa 627, 639, 298 N.W. 804; Stolar v. Turner, 237 Iowa 593, 606, 607, 21 N.W. 2d 544.

In such a probate action as this, tried as an ordinary action at law, only a preponderance of evidence is required. In re Estate of Dolmage, 204 Iowa 231, 234–237, 213 N.W. 380, and citations; In re Estate of Newson, 206 Iowa 514, 524, 219 N.W. 305; In re Estate of Stratman, 231 Iowa 480, 487, 1 N.W.2d 636, 642; Meredith v. Cockshoot, 235 Iowa 213, 220, 16 N.W.2d 221, 225; In re Estate of Karr, 235 Iowa 351, 360, 16 N.W.2d 634, 638; Roth v.

Headlee, supra, 238 Iowa 1340, 1343, 29 N.W.2d 923, 924. However, the trial court here found the proof was clear, satisfactory and convincing and upon this appeal it may be assumed such is the requisite quantum of proof.

In argument defendant suggests plaintiff's amended claim was insufficient to plead a gift causa mortis. No such contention was made in the lower court. The case was tried and submitted as if plaintiff's pleading sufficiently alleged such a gift. Defendant's motions to strike and dismiss at the close of the evidence challenged the sufficiency of the evidence only and recognized plaintiff had "attempted to plead a gift causa mortis." Hence plaintiff's pleading will be deemed sufficient here. See Wilson v. Corbin, 241 Iowa 593, 605, 606, 41 N.W.2d 702, 709, and citations.

Gifts causa mortis have been frequently recognized by us. Such a gift is defined as a gift of personal property made by one in expectation of death, then imminent, upon condition that the property shall belong fully to the donee if the donor dies as anticipated, leaving the donee surviving him, and the gift is not in the meantime revoked. There cannot be such a gift unless (1) it is with a view to the donor's death, (2) it is conditioned to take effect only on the donor's death from his existing disorder or illness, and (3) there be a delivery of the subject of the gift. No writing or consideration is necessary. Flint v. Varney, 220 Iowa 1241, 264 N.W. 277; Vosburg v. Mallory, 155 Iowa 165, 135 N.W. 577, Ann. Cas. 1914C 880; Stokes v. Sprague, 110 Iowa 89, 81 N.W. 195; 38 C. J. S., Gifts, section 75; 24 Am. Jur., Gifts, section 4.

It is not necessary that the gift be made while the donor is in extremis or in apprehension of immediate death when there is no time or opportunity to make a will, or that he be confined to his bed or room. Flint v. Varney, supra; 38 C. J. S., Gifts, section 78; 24 Am. Jur., Gifts, section 6.

Technically, acceptance of the gift by the donee, as well as delivery, is necessary. However, where as here the gift is beneficial and imposes no burden upon the donee, acceptance is presumed as a matter of law. Flint v. Varney, supra, and citations; 38 C. J. S., Gifts, section 88; 24 Am. Jur., Gifts, section 40. See

also Coomes v. Finegan, 233 Iowa 448, 451, 7 N.W.2d 729, 730.

▮ There may be a constructive or symbolical delivery where manual tradition cannot be made, either from the nature of the subject or its situation at the time. Vosburg v. Mallory, supra, at page 169 of 155 Iowa; Stokes v. Sprague, supra, 110 Iowa 89, 81 N.W. 195; Darland v. Taylor, 52 Iowa 503, 506, 3 N.W. 510, 35 Am. Rep. 285; 38 C. J. S., Gifts, section 83; 24 Am. Jur., Gifts, section 27.

▮ Where the things intended to be given are not present or are incapable of manual delivery because of size or weight, delivery of a key which gives access to them is frequently held to be a valid constructive or symbolical delivery. Thus delivery of the key to a safe-deposit box is often held a sufficient delivery of its contents unless the circumstances are such that they might be then and there actually delivered. See Braun v. Brown, 14 Cal.2d 346, 94 P.2d 348, 127 A. L. R. 773, and annotation 780; Oliver v. Crook, 321 Ill. App. 55, 52 N.E.2d 453, and citations; In re Estate of Stevenson, 79 Ohio App. 315, 69 N.E.2d 426; 38 C. J. S., Gifts, section 83, page 904; 24 Am. Jur., Gifts, section 28. And see Iowa cases cited last above.

▮ It is well settled that declarations of the donor in the nature of admissions against interest, subsequent to the alleged gift, are admissible as evidence thereof. Delivery may be inferred from such declarations. "Prior declarations of the donor constitute part of the res gestae." Flint v. Varney, supra, 220 Iowa 1241, 1247, 264 N.W. 277, 281; Darland v. Taylor, supra, 52 Iowa 503, 506, 3 N.W. 510, 35 Am. Rep. 285; Carpenter v. Carpenter, 153 Or. 584, 56 P.2d 305, 105 A. L. R. 386, and annotation 398; 24 Am. Jur., Gifts, section 121.

▮ We will now refer to some of the evidence. Testatrix lived alone many years down to the time of her death, except when a nurse helped to care for and stayed with her. She was at least a semi-invalid, afflicted with different ailments including heart trouble, under the care of physicians, unable to do her housework or climb stairs. She had not felt so well Christmas morning (1949) and plaintiff had gone to her mother's home to see if she could get a doctor for her. Testatrix' death on December 28 appeared to be due to her long-standing heart condition. It is clear there is substantial evidence to support the finding the gift

claimed by plaintiff was made by her mother in expectation of death which occurred three days later from her existing illness.

On the question of delivery, neither the furniture and furnishings in testatrix' home nor the contents of her safe-deposit box were manually handed over to plaintiff on Christmas Day. The bank was doubtless closed for the holiday and actual access to the box at that time could not reasonably have been had. The law did not require physical delivery either of the bulky household effects or the contents of the bank box. A valid delivery could be effected by testatrix delivering to plaintiff the key to the home and key to the box.

We have alluded to part of the testimony of plaintiff's husband. He says he saw testatrix give plaintiff these keys and he in turn put them in a safe place. The keys were in the possession of plaintiff or her attorney after testatrix died. At least six close friends of testatrix, all presumably disinterested, testify to statements by her which corroborate Mr. Carlson's evidence. Plaintiff's own lips were sealed by section 622.4.

One witness worked as a nurse for testatrix part time for nine years down to the time of her death. She says, "Mrs. Denholm told me many times her property all belonged to her daughter." Another nurse who was in testatrix' home from May to September 1949 and who previously had nursed testatrix' father and mother in the same home testifies Mrs. Denholm told her a week or so before Christmas she wanted plaintiff to have all her personal property and plaintiff would have it but Allan Clark (cousin) was to have the house. A next door neighbor says testatrix told her at Thanksgiving time in 1949 everything she had was plaintiff's. Another close friend testifies that while she and testatrix were looking at a bedroom suite in testatrix' home the day she died, Mrs. Denholm said, "That was my mother's. Everything I have I have given to Frankie [plaintiff]." The witness also says testatrix told her on this occasion she had given plaintiff the keys and told her where everything was. Another long-time friend testifies Mrs. Denholm told her after Christmas 1949, "Frankie knows she will get everything I have anyway."

Regardless of what our decision might be upon a review de novo of the evidence it appears from the above there is substantial testimony to warrant the conclusion a valid constructive or

symbolical delivery was made of the furniture and furnishings in the home and the contents of the safe-deposit box. Since it is not our province to weigh the evidence we need not refer to testimony offered by the executor. The trial court seems to have carefully considered it.

Much of the furniture had belonged to Mrs. Denholm's mother. There were close relations between testatrix' mother and plaintiff. There is substantial evidence Mrs. Denholm felt she was carrying out her mother's wishes by giving plaintiff this furniture. It was natural for testatrix to hand down the contents of the home to her only child.

It is true, as stated, that testatrix' will, made June 4, 1948, leaves the furniture and other personalty in the home to her cousin Allan Clark. There is much evidence that at the time the will was made plaintiff and her mother were not on friendly terms and had not been for several years, but they became reconciled at the time of the mother's birthday in August 1948 and remained so until her death. This affords reasonable explanation for testatrix' change of heart, so to speak, after the will was made.

III. There is no merit in the defense that plaintiff's amended claim is barred by section 635.68, Code, 1950, because not filed within six months from the giving of notice of the executor's appointment. This is not a claim against the estate within the meaning of that statute. Plaintiff had no cause of action against her mother in the latter's lifetime. Plaintiff merely seeks to recover property she asserts belongs to her that is held by the executor. In re Estate of Conner, supra, 240 Iowa 479, 487, 36 N.W.2d 833, 838; Oliver v. Crook, supra, 321 Ill. App. 55, 52 N.E.2d 453, 460. See also 34 C. J. S., Executors and Administrators, section 401; 21 Am. Jur., Executors and Administrators, sections 353, 363.

IV. Upon plaintiff's appeal from the court's refusal to award her three bank accounts and a $25 government bond plaintiff argues in effect she was entitled to prevail as a matter of law and there is no basis for the denial of this part of her claim in view of the relief awarded her on the rest of it. The issue upon plaintiff's appeal is not whether the testimony is sufficient to support recovery as to the accounts and bond but whether it is so

conclusive as to require recovery as a matter of law. Plaintiff is in the same position as if a jury verdict had been returned against her as to this part of her claim.

We are clear plaintiff (who had the burden of proof) was not entitled *as a matter of law* to have the bank accounts and bond awarded her. Had the trial been to a jury plaintiff would not have been entitled to a directed verdict in her favor as to the accounts and bond. At best, the matter would have been for the jury to decide. Hence there should be an affirmance upon plaintiff's appeal. See, in this connection, Roth v. Headlee, supra, 238 Iowa 1340, 29 N.W.2d 923, and citations; Davis v. Knight, 239 Iowa 1338, 35 N.W.2d 23, and citations.

The basis for the trial court's refusal to award plaintiff the bank accounts and bond does not clearly appear. However, he may well have concluded that while there was a valid constructive delivery of the furniture and furnishings and the contents of the safe-deposit box, this was not true as to the bank accounts and bond.

There is evidence the passbooks for the bank accounts were in a purse in the china cabinet in the home. As to the effect of possession of the passbooks upon ownership of the bank accounts see In re Estate of Hanson, 205 Iowa 766, 771, 218 N.W. 308. We do not find the location of the $25 bond shown. We understand it was somewhere in the home.

It is obvious these bank books and the bond could readily have been handed plaintiff, while it was extremely inconvenient, to say the least, for testatrix to hand over to plaintiff a bedstead and other furniture and furnishings or even the contents of the safe-deposit box. See 38 C. J. S., Gifts, section 83; 24 Am. Jur., Gifts, section 28; annotations 127 A. L. R. 780, 793; 40 A. L. R. 1249, 1255; 84 A. L. R. 558.

Upon both appeals the judgment is—Affirmed.

All JUSTICES concur.